DELMAR W. GIRARD, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Girard v. Commissioner
Docket No. 18752-92
United States Tax Court
T.C. Memo 1994-556; 1994 Tax Ct. Memo LEXIS 561; 68 T.C.M. (CCH) 1148; 68 Trade Cas. (CCH) P1147; November 2, 1994, Filed *561 Decision will be entered under Rule 155. Delmar W. Girard, pro se. For respondent: Margaret S. Rigg, for respondent. CHIECHI
CHIECHI
MEMORANDUM FINDINGS OF FACT AND OPINION CHIECHI, Judge: Respondent determined the following deficiencies in, and additions to, petitioner's Federal income tax: Additions to Tax
Section
Section
Section
Year
Deficiency
6651(a)(1) [1]
6653(a)(1)
6653(a)(1)(A)
1982
$ 24,788.00
$ 6,197.00
$ 1,239.40
$ --
1984
14,512.00
2,311.00
725.60
--
1985
17,614.00
3,278.00
880.70
--
1986
65,086.00
5,132.00
--
3,254.30
1987
88,562.00
11,139.00
--
4,428.10
1988
59,781.00
3,093.00
2,989.05
--
1989
31,805.00
583.00
--
--
Additions to Tax
Section
Section
Section
Year
6653(a)(1)(B)
6653(a)(2)
6654(a)
1982
-- *
$ 2,413.00
1984
-- *
912.00
1985
-- *
718.00
1986 *
--
1,653.00
1987 *
--
--
1988
--
--
505.00
1989
--
--
135.00
* 50 percent of the interest due on the
portion of the underpayment attributable to
negligence. Respondent determined that
the entire underpayment was attributable to
negligence.
*562 The issues remaining for decision are: (1) Did petitioner have as a result of his trading activities net gains for 1982 and for 1984 and a net loss for 1983 [2] in the amounts determined by respondent? We hold that he did. (2) Is petitioner taxable for 1987 on amounts paid on his behalf and benefits provided to him by his employer? We hold that he is. (3) Is petitioner entitled to deductions in excess of those allowed by respondent for any year at issue? We hold that he is to the extent provided herein. (4) Is petitioner's *563 filing status married filing separately for each year at issue? We hold that it is. (5) Is petitioner entitled to any exemptions for either his wife or child for each year at issue? We hold that he is not. (6) Is petitioner liable for each year at issue for the addition to tax for failure to file timely a return under section 6651(a)(1)? We hold that he is. (7) Is petitioner liable for each year at issue for the additions to tax for negligence under section 6653(a)? We hold that he is. (8) Is petitioner liable for each year at issue except 1987 for the addition to tax for failure to pay estimated tax under section 6654(a)? We hold that he is. FINDINGS OF FACT Some of the facts have been stipulated and are so found. Petitioner, who was married during all of the years at issue, resided in Moraga, California, at the time the petition was filed. Petitioner did not file Federal income tax returns for any of the years 1980 through 1989. On May 19, 1992, respondent mailed a notice of deficiency to petitioner for taxable years 1982 and 1984 through 1989. Petitioner's Trading Activities
During 1982, 1983, and 1984, petitioner made trades of commodities, futures, and *564 Government bonds through the Chicago Board of Trade (CBT). Trades on the CBT are based on a mark-to-market system. For 1982, 1983, and at least part of 1984, petitioner cleared his trades through the Virginia Trading Co. (VTC). Sometime during 1984, VTC was acquired by Goldenberg, Hehmeyer & Co. (GHC). GHC provided the information for VTC for 1984 that appeared on Forms 1099-B (statements for receipts of proceeds from broker and barter exchange transactions) that were issued to various taxpayers, including petitioner. The Internal Revenue Service's Information Return Program (IRP) transcript relating to petitioner for 1984 (1984 IRP transcript) summarized, inter alia, the information provided by GHC for VTC that appeared on Form 1099-B issued to him for that year. In order to trade with the CBT, petitioner was required to maintain a membership lease (membership lease). He had such a lease continuously throughout the period August 28, 1981, through June 27, 1985, for which he incurred expenses. Petitioner's membership lease was through J. Nutt at least for the periods (1) September 1983 through December 1983 and (2) December 28, 1984, through June 27, 1985. Petitioner made *565 membership lease payments to J. Nutt of $ 1,335 on September 30, 1983, $ 750 on November 1, 1983, and $ 750 on December 1, 1983. The membership lease payment made to J. Nutt on September 30, 1983, represented payment for petitioner's membership lease expenses for September and October 1983. Benefits Provided to Petitioner
On February 6, 1985, petitioner began working for Bank of America (Bank) in Chicago. The Bank formally transferred petitioner to San Francisco on July 15, 1985. In connection with that transfer, Bank records show that the Bank paid on behalf of petitioner and provided benefits to him in the following amounts: Description Amount Transportation of household goods
$ 18,190.25
Expenses of moving from old to new residence
825.00
Temporary living expenses
[3] 38,000.00
Weekend and other travel
2,458.00
Federal taxes paid
10,118.96
State taxes paid
1,517.84
Total
$ 71,110.05
*566 The category "temporary living expenses" [4] reflects internal rental value charges by the Bank of $ 50 per day for an apartment provided to petitioner as temporary housing in San Francisco from September 1, 1985, through September 30, 1987. The category "weekend and other travel" reflects payments by the Bank for airline expenses incurred on petitioner's behalf. The categories "Federal taxes paid" and "State taxes paid" reflect payments by the Bank on petitioner's behalf to the respective taxing authorities for petitioner's increased tax liability, as determined by the Bank, attributable to the expenses associated with his transfer from Chicago to San Francisco that the Bank assumed on his behalf. During the years at issue, it was the Bank's policy to account at the end of the year in which an employee's transfer to a new *567 location was finalized for all of the expenses it incurred in connection with such a transfer. Such expenses were treated by the Bank as wages paid to that employee. Because of his transfer by the Bank to San Francisco, petitioner attempted to sell his house in Chicago beginning in the summer or fall of 1985. At some point during the summer or fall of 1986, petitioner stopped trying to sell his house in Chicago. Petitioner's wife moved to San Francisco in or about September 1987. By September 1985, petitioner's principal place of business was in the San Francisco area. Petitioner worked for the Bank in San Francisco from about the summer of 1985 until January 1988. Thereafter, petitioner remained in San Francisco with a new employer. Petitioner has been living and working in the San Francisco area on a continuous basis since about the summer of 1985. Legal Fees
Petitioner and two other individuals retained the law firm of Coffield, Ungaretti, Harris & Sloan[5] (Coffield, Ungaretti) to represent them as plaintiffs in a lawsuit (Drexel lawsuit) against their former employer Drexel, Burnham and Lambert (Drexel) for the recovery of commissions, brokerage fees, and travel *568 and entertainment expenses. Under the original arrangement with that firm, legal fees were to be paid on a monthly basis for services rendered. At some point during 1982, that arrangement was changed to a contingency fee basis plus a $ 2,000 per month retainer. Petitioner's coplaintiffs paid at least part of the legal fees owed to Coffield, Ungaretti as a result of the Drexel lawsuit. In December 1984, petitioner received and cashed a check for $ 71,209.45 from Coffield, Ungaretti. The check represented petitioner's share of the proceeds from the Drexel lawsuit. The check received by petitioner was net of attorneys' fees retained by Coffield, Ungaretti. Interest Expense
Petitioner borrowed $ 100,000 from Pemberton H. Shober, Jr. (Mr. Shober) beginning in the late 1970s. *569 On February 23, 1985, petitioner paid Mr. Shober $ 42,671.71, of which $ 35,000 was for principal and $ 7,671.71 was for interest. In order to make that payment, petitioner borrowed $ 35,000 from Peggy Ogorek (Ms. Ogorek). On a date not disclosed in the record, petitioner remitted a check, dated December 30, 1988, in the amount of $ 6,312.75 to Ms. Ogorek. The check was endorsed by Ms. Ogorek on January 18, 1989. On December 30, 1987, petitioner signed a note for $ 65,000 (Shober note) plus interest in settlement of a lawsuit instituted by Mr. Shober for collection of the balance of the $ 100,000 borrowed by petitioner. The Shober note called for interest payments of $ 29,700 on December 31, 1987, $ 6,500 on December 31, 1988, and $ 6,500 on December 31, 1989. The Shober note also required a principal payment of $ 65,000 on December 31, 1989. On a date not disclosed in the record, petitioner remitted a cashier's check, dated December 30, 1987, in the amount of $ 19,700 to Mr. Shober. That check was in payment of $ 19,700 of the total $ 29,700 in interest that was due under the Shober note on December 31, 1987. OPINION Petitioner bears the burden of proving that the determinations *570 made by respondent in the notice of deficiency are erroneous. [6] *571 Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). He has attempted to satisfy his burden through testimonial and documentary evidence.[7]Petitioner was the only witness on his behalf. Most of his testimony was self-serving and uncorroborated. Although at times petitioner's testimony was specific, in most instances, it was general and vague. At times, it also appeared to be evasive. Under the circumstances, we are not required to, and, in most instances, we do not, rely on petitioner's testimony to support his positions in this case. See Geiger v. Commissioner, 440 F.2d 688, 689-690 (9th Cir. 1971), affg. per curiam T.C. Memo. 1969-159; Wood v. Commissioner, 338 F.2d 602, 605 (9th Cir. 1964), affg. 41 T.C. 593 (1964); Tokarski v. Commissioner, 87 T.C. 74, 77 (1986); Hradesky v. Commissioner, 65 T.C. 87, 90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976). Petitioner's Trading Activities
Section 6001 requires all taxpayers to maintain sufficient records to determine their correct tax liabilities. Where a taxpayer fails to keep records, or where the records do not accurately reflect income, "the computation of taxable income shall be made under such method as, in the opinion of the Secretary, does clearly reflect income." Sec. 446(b). The choice of the method to be used in reconstructing income lies with respondent. Rau's Estate v. Commissioner, 301 F.2d 51, 54 (9th Cir. 1962), affg. T.C. Memo. 1959-117; Schellenbarg v. Commissioner, 31 T.C. 1269, 1277 (1959), affd. in part and revd. in part on another issue 283 F.2d 871 (6th Cir. 1960). The only restriction on respondent's choice is that the reconstruction must be reasonable in light of all the surrounding facts and circumstances. Petzoldt v. Commissioner, 92 T.C. 661, 687 (1989); Schroeder v. Commissioner, 40 T.C. 30, 33 (1963). *572 The taxpayer bears the burden of proving that respondent's method of reconstruction is unreasonable. Cracchiola v. Commissioner, 643 F.2d 1383, 1385 (9th Cir. 1981), affg. per curiam T.C. Memo. 1979-3. Petitioner does not dispute that he did not provide respondent with adequate records from which his income tax liability for the years at issue could be calculated. Respondent therefore was authorized to reconstruct petitioner's income for each of those years, and petitioner bears the burden of proving that respondent's reconstruction is unreasonable. Respondent reconstructed petitioner's net gain or loss from his trading activities for each of the years 1982 through 1984 from records provided by third parties. For 1982 and 1983, respondent used records maintained by VTC showing petitioner's trading accounts with VTC. For 1984, respondent used an IRP transcript based on a Form 1099-B relating to petitioner that was provided for VTC by GHC which had acquired VTC sometime during 1984. [8] Respondent determined from those records that petitioner had a net trading gain of $ 112,571 for 1982, a net trading loss of $ 176,003 *573 for 1983, and a net trading gain of $ 128,118 for 1984, which were capital, and not ordinary, under section 1256. [9]
Petitioner attacks the reliability of the VTC records for 1982 and 1983 and the information appearing in the 1984 IRP transcript that was obtained from a Form 1099-B relating to petitioner that was provided for VTC by GHC. Petitioner insists that those documents contain errors that have caused respondent to calculate incorrectly his net gain or loss from his trading activities for each of the years 1982 through 1984. With respect to the VTC records used by respondent for 1982 and 1983, they are records of petitioner's accounts with VTC that show petitioner's purchases and sales of commodities, futures, and/or Government bonds. For both 1982 and 1983, petitioner maintained several accounts with VTC. Except for one account that is a record of petitioner's *574 cash disbursements and receipts (cash account), each VTC record of an account for each of those years appears to relate to petitioner's trading in one type of security or commodity. Petitioner alleges that the VTC records of his accounts for 1982 and 1983 are replete with errors and that, therefore, they do not accurately reflect his trading gains and losses for either of those years. In support of his position, at trial, petitioner pointed to only a few transactions reflected in the VTC records that, on their face, appear to be in error. For example, the VTC records for August 1983 of petitioner's account relating to trades in grain commodities and/or futures (grain account) indicate in a few places that trades were made in bond options. Since the grain account appears to be limited to recording trades made in grain commodities and/or futures, the recording of bond trades in that account appears to be incorrect. However, even if the VTC records contain the few errors to which petitioner refers, he nonetheless failed to demonstrate that the trades that appear to be recorded in the wrong account were duplicated elsewhere in the VTC records or that they otherwise caused respondent's *575 determination of petitioner's net trading gain for 1982 and net trading loss for 1983 to be inaccurate. Petitioner also claims that the VTC records overstate his trading gains for 1982 and 1983 because they do not reflect "out trades". According to petitioner, an out trade is a correction between member traders on the CBT that is made in order to adjust for a trade that was erroneous. Petitioner explained that, in order to correct the error, one trader pays back the gains earned in error to the other trader involved in the transaction. This restores both traders to the status quo prior to the erroneous trade. However, according to petitioner, the erroneous trade remains on the records of the accounts of the individual trader that are maintained by the trading company. Petitioner asserts that the VTC records for 1982 and 1983 show transactions in respect of which he paid back gains received in error as out trades to other traders. He argues that since those records do not reflect his repayment of such gains, they do not show his actual net trading gain or loss for 1982 and 1983. In support of this assertion, at trial, petitioner pointed to a transfer of money to another person *576 that is reflected in the record of his cash account that was maintained by VTC for 1982. In reflecting this transfer, the cash account record indicates the name of the payee and the amount of the transfer, but does not state the purpose of the transfer. Thus, the only evidence that petitioner provided to establish that the payment to which he referred represented the payment for an out trade is his uncorroborated, self-serving testimony which we do not accept. Moreover, even if petitioner paid back gains in the form of out trades during 1982 or 1983, he failed to prove that the VTC records for those years did not properly account for the out trades or that the out trades otherwise caused respondent's determination of petitioner's net trading gain for 1982 and net trading loss for 1983 to be inaccurate. Based on the instant record, we find that petitioner failed to sustain his burden of proving that respondent's reconstruction of petitioner's net trading gain for 1982 and net trading loss for 1983 was unreasonable. We therefore sustain respondent's determination of such gain and loss for those respective years. With respect to the 1984 IRP transcript that was used by respondent *577 to reconstruct his net trading gain for 1984, petitioner alleges that certain of the amounts shown therein are in error. Petitioner believes that he had a net trading loss for 1984 and that the amounts shown in the IRP transcript that were based on Form 1099-B that was provided to the Internal Revenue Service by GHC should have been negative numbers. Petitioner adduced no evidence to support his position beyond his unsupported, self-serving general assertion that he had a net trading loss for 1984. We thus are unwilling to find that the IRP transcript for 1984 is incorrect. Consequently, petitioner has failed to sustain his burden of establishing that respondent's method of reconstruction of his net trading gain for 1984 was unreasonable. We therefore sustain respondent's determination of that gain. In addition to his claims regarding errors in the records used to reconstruct his income, petitioner alleges that he had trading losses for years prior to 1982 that should be carried forward to reduce his trading gains for 1982 and 1984. Petitioner offered no evidence beyond his uncorroborated, self-serving general testimony that he had such trading losses. Consequently, petitioner *578 has failed to sustain his burden of proving that he incurred trading losses for years prior to 1982 that he is entitled to carry forward to 1982 and 1984. We therefore sustain respondent's determination that petitioner is not entitled to such loss carryforwards. Benefits Provided to Petitioner
Respondent determined that petitioner had taxable wage income for each of the years 1985 through 1989. Petitioner agrees with respondent's determination except with respect to $ 71,110.05 consisting of expenses paid on his behalf and benefits provided to him by the Bank that were related to petitioner's transfer by the Bank to San Francisco. Petitioner argues that he is not taxable on those items and, alternatively, that if he is found to be so taxable, he is entitled to a deduction for them. Section 61(a) provides that "gross income means all income from whatever source derived". Expenses paid on behalf of and benefits provided to employees by an employer as compensation are generally included in gross income. Sec. 61(a)(1); see Commissioner v. Kowalski, 434 U.S. 77, 83 (1977). Consequently, the expenses paid by the Bank on petitioner's behalf and *579 the fair market value of the benefits provided by the Bank to him in connection with his transfer to San Francisco are gross income to him. [10] We therefore sustain respondent's determination that amounts totaling $ 71,110.05 that consist of expenses paid on petitioner's behalf and benefits provided to him by the Bank are income to petitioner for 1987. We now turn to petitioner's alternative claim that if the Court determines that he is taxable on amounts totaling $ 71,110.05, he is entitled to a deduction for those amounts. After concessions by respondent, [11] there remain at issue temporary living expenses of $ 36,500, weekend and other travel of $ 2,458, and Federal taxes of $ 10,118.96. *580 Although petitioner has not clearly stated his theory of deductibility with respect to the temporary living expenses and weekend and other travel, he seems to allege that he is entitled to a deduction for those items under section 162(a)(2). That section authorizes a deduction for "traveling expenses (including amounts expended for meals and lodging * * *) while away from home in the pursuit of a trade or business". To be deductible under that section, we must find, inter alia, that petitioner was "away from home". Commissioner v. Flowers, 326 U.S. 465, 470 (1946). Generally, a taxpayer's home for tax purposes is the abode at his or her principal place of business. Coombs v. Commissioner, 608 F.2d 1269, 1274 (9th Cir. 1979), affg. in part and revg. in part 67 T.C. 426 (1976). Where a taxpayer's home is for tax purposes is a question of fact. Id. If the assignment at the principal place of business is merely temporary, the taxpayer may be considered away from home. See Peurifoy v. Commissioner, 358 U.S. 59, 60 (1958). An assignment is treated as temporary *581 if it is very likely that the assignment will be of a short duration. Neal v. Commissioner, 681 F.2d 1157, 1158 (9th Cir. 1982), affg. per curiam T.C. Memo. 1981-407; Harvey v. Commissioner, 283 F.2d 491, 494 (9th Cir. 1960), revg. 32 T.C. 1368 (1959). On the other hand, if there is a reasonable probability known to the taxpayer that the assignment will last a long period of time, it is reasonable to require the taxpayer to move his home to the principal place of business. Harvey v. Commissioner, supra at 495. By September 1985, petitioner's principal place of business was in the San Francisco area. He performed most of his work there, and the Bank provided him with an apartment there that was assigned and available to him on a full-time basis. Unless his assignment in San Francisco was temporary, his home for tax purposes also was transferred to San Francisco at that time. Petitioner's actions show that his transfer to San Francisco by the Bank was to be a permanent transfer. In keeping with this belief, petitioner began trying *582 to sell his house in the Chicago area around the time of his original transfer in the summer or fall of 1985. Nothing in the Bank's relocation files indicates that the Bank, petitioner's employer, intended to transfer him back to the Chicago area. In fact, the Bank conducted the type of business for which petitioner was hired in San Francisco, but not in the Chicago area. Although petitioner suggested that he had negotiations with the Bank regarding the possibility of moving his position back to Chicago, he has not shown that it was very likely that his job in San Francisco was to be of a relatively short duration. On the instant record, petitioner has failed to sustain his burden of proving that he was away from home within the meaning of section 162(a)(2) during the period in which the Bank provided him with temporary living quarters and paid his weekend and other travel expenses. We therefore sustain respondent's determination that petitioner is not entitled to a deduction for those items under section 162(a)(2). With respect to the Federal taxes that the Bank paid on his behalf, the Internal Revenue Code does not authorize a taxpayer to deduct Federal taxes. We therefore *583 sustain respondent's determination that petitioner is not entitled to a deduction for Federal taxes paid on his behalf. Claimed Legal Fees
In December 1984, petitioner received a check from Coffield, Ungaretti that represented his share of the net proceeds from the Drexel lawsuit. Respondent determined that those proceeds are taxable income to petitioner for 1984. Although petitioner does not dispute that determination, he claims that he is entitled to a deduction for legal fees paid in connection with that lawsuit. A taxpayer is entitled to a deduction for legal expenses incurred in connection with a lawsuit for the recovery of proceeds that represent gross income to that taxpayer. Stocks v. Commissioner, 98 T.C. 1, 18 (1992). However, petitioner must prove the amount of legal expenses so incurred. See Rule 142(a). As proof of amounts he paid as attorneys' fees, petitioner introduced into evidence a letter from Coffield, Ungaretti stating that a contingency fee arrangement that required a $ 2,000 per month retainer had been reached on May 13, 1982. The letter further stated that the law firm was owed $ 5,656.95 for legal fees incurred *584 prior to May 13, 1982. Petitioner also testified that the amount of the check he received from Coffield, Ungaretti as proceeds from the Drexel lawsuit was net of attorneys' fees retained by that firm. He further testified that part of the amount retained by Coffield, Ungaretti represented payment for past due legal fees and that his coplaintiffs paid part of the legal fees as they became due. On the instant record, we are unable to determine whether petitioner paid any legal fees in addition to the amount retained by Coffield, Ungaretti from the net proceeds they paid to him with respect to the Drexel lawsuit. Consequently, petitioner has failed to carry his burden of proving that he paid attorneys' fees for which he is entitled to a deduction. [12] We therefore sustain respondent's determination that petitioner is not entitled to any deductions for legal fees. *585 Claimed Business Expenses
Respondent does not dispute that petitioner was in the business of trading for each of the years 1982 through 1985 and that petitioner is entitled to certain business deductions for each of those years. Among the deductions conceded by respondent at trial are the following deductions for petitioner's membership lease expenses: $ 2,500 per month for the period August 28, 1981, through February 27, 1983, [13] and $ 550 per month for the period December 28, 1984, through June 27, 1985. Petitioner claims that he is entitled to additional deductions for amounts paid for membership lease expenses. *586 Section 162 generally allows a deduction for ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business. The determination of whether an expenditure satisfies the requirements of deductibility under section 162 is question of fact. Commissioner v. Heininger, 320 U.S. 467, 475 (1943); Hearn v. Commissioner, 309 F.2d 431, 431 (9th Cir. 1962), affg. 36 T.C. 672 (1961). In general, an expense is ordinary and necessary if it is considered "normal, usual, or customary" in the context of the particular business out of which it arose. Deputy v. du Pont, 308 U.S. 488, 495-496 (1940). Ordinarily, an expense is necessary if it is appropriate and helpful to the operation of the taxpayer's trade or business. Commissioner v. Tellier, 383 U.S. 687, 689 (1966); Carbine v. Commissioner, 83 T.C. 356, 363 (1984), affd. 777 F.2d 662 (11th Cir. 1985). In support of his claim that he had additional membership lease expenses for which he is entitled *587 to deductions, at trial, petitioner pointed to the following payments that are reflected in the VTC records of his cash account: $ 1,335 on September 30, 1983, $ 750 on November 1, 1983, and $ 750 on December 1, 1983. The first two payments are shown as payments to J. Nutt. The last payment is shown as a payment to I. Natt. Petitioner testified that the VTC records should have reflected that last payment as one to J. Nutt. The payments for November and December 1983 are shown in the VTC records as "lease" payments. We have found on the instant record that petitioner had a membership lease with J. Nutt at least for the periods (1) September 1983 through December 1983, and (2) December 28, 1984, through June 27, 1985, and that petitioner was required to, and did in fact, maintain a membership lease throughout the period August 28, 1981, through June 27, 1985, because he could not trade without one. Moreover, respondent does not dispute that petitioner was in the business of trading for each of the years 1982 through 1985. Based on the instant record, we have found that petitioner's payments of $ 1,335 on September 30, 1983, $ 750 on November 1, 1983, and $ 750 on December 1, *588 1983, were payments of membership lease expenses incurred from September through December 1983. We therefore hold that petitioner is entitled to a deduction of $ 2,835 for membership lease expenses incurred during 1983 in excess of the amounts conceded by respondent. With respect to the remaining portion of the period August 28, 1981, through June 27, 1985 (i.e., March [14] through August 1983 and January through December 27, 1984), on the instant record, we have found that petitioner incurred additional membership lease expenses during those periods. However, he has not established the amounts of those expenses for those periods. Under these circumstances, we are permitted to estimate the amounts allowable as deductions. Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930). Any estimates we make must weigh heavily against petitioner because he is responsible for the proof required to substantiate the claimed deductions. Cohan v. Commissioner, supra at 543-544. Based on our review of the entire record, we find that petitioner incurred membership lease expenses of $ 650 per month for the period March through August *589 1983 [15] and $ 450 for each month, or partial month, during the period January through December 27, 1984. [16] We therefore hold that petitioner is entitled to deductions of $ 3,900 for 1983 and $ 5,400 for 1984 for membership lease expenses in excess of the amounts conceded by respondent and those allowed above by the Court. *590 In addition to membership lease expenses, petitioner claims that he incurred office rent expenses during the years at issue. To support that claim, petitioner offered two receipts dated March 1 and March 26, 1984, each of which is for $ 265.50 and each of which has the notation "rent". Petitioner testified that those receipts represent payments he made for office rent. Petitioner's cash account in the records maintained by VTC for December 1983 shows that payments were made for "lease" in the amount of $ 750 and "rent" in the amount of $ 265.50. It thus appears that petitioner may have incurred not only a membership lease expense, but also some other type of rent expense during at least part of the years at issue. However, aside from labeling it "office rent", petitioner has not explained the nature or purpose of that claimed rent or otherwise attempted to show that it was ordinary and necessary as required by section 162. We therefore hold that petitioner is not entitled to office rent expense deductions for any year at issue. In addition to membership lease and office rent expenses, petitioner testified that he is entitled to a business expense deduction for a $ 40,000 payment *591 made to VTC in December 1984. He testified that $ 12,000 of that amount was for debit interest and $ 28,000 was for clearing fees. Petitioner offered no evidence corroborating his testimony as to the purpose of his payment to VTC or as to whether the payment was actually made. Consequently, he has failed to meet his burden of establishing that he is entitled to a deduction for business expenses relating to his alleged payment of $ 40,000 to VTC in December 1984. We therefore hold that petitioner is not entitled to a deduction for that claimed payment. Claimed Interest Expense
Respondent determined that petitioner is entitled to a deduction for certain interest expenses for each year at issue. [17] Petitioner asserts that he is entitled to interest deductions for some of those years in excess of the amounts allowed by respondent. Section 163(a) allows a deduction for all interest paid or accrued during the taxable year. However, for taxable years beginning with 1987, section 163(h) phases out the deduction for so-called personal interest. *592 Claimed Debit Interest Expense
Petitioner claims that he is entitled to an interest deduction for 1983 for "debit interest" paid during that year. He testified that the debit interest expense he is claiming for 1983 is the same type of expense for which respondent allowed him a deduction for 1982. Petitioner claims that the VTC records for 1983 show that amounts totaling $ 1,105 were charged against his accounts as debit interest incurred during 1983. We asked petitioner to direct the Court's attention on brief to where those charges appear in the record. Petitioner failed to submit any briefs in this case. Our review of the instant record has not enabled us to conclude that petitioner has met his burden of establishing that he incurred deductible debit interest expenses for 1983. We therefore sustain respondent's determination that petitioner is not entitled to debit interest deductions for that year. Claimed Interest Payments to Mr. Shober and Ms. Ogorek
Petitioner also claims that he is entitled to interest expense deductions for each of the years 1985 and 1987 through 1989 for interest payments arising out of his dealings with Mr. Shober and Ms. Ogorek. On February *593 23, 1985, petitioner paid Mr. Shober $ 42,671.71 in partial satisfaction of a $ 100,000 debt that he owed him. We have found as a fact on the present record that this payment represented $ 35,000 of principal and $ 7,671.71 of interest. Consequently, we hold that petitioner is entitled to an interest deduction of $ 7,671.71 for 1985 under section 163(a). [18]
In addition to the interest payment made to Mr. Shober during 1985, petitioner testified that he made additional interest payments related to the $ 65,000 due under the Shober note. That note, which was signed on December 30, 1987, required interest payments by petitioner to Mr. Shober of $ 29,700 on December 31, 1987, $ 6,500 on December 31, 1988, and $ 6,500 on December 31, 1989. The Shober note also required the principal of $ 65,000 to be paid on December 31, 1989. On a date not disclosed in the record, petitioner gave Mr. Shober a cashier's check, *594 dated December 30, 1987, in the amount of $ 19,700. We have found as a fact on the instant record that the payment of $ 19,700 represented the payment of interest to Mr. Shober. Although the record does not disclose whether petitioner paid the $ 19,700 to Mr. Shober in 1987 or 1988, respondent does not argue that the payment was made after 1988. Consequently, we find that petitioner paid $ 19,700 to Mr. Shober as interest during 1988. Nonetheless, petitioner is not entitled to deduct the full amount of that interest payment. For tax years beginning with 1987, section 163(h) began phasing out the interest deduction for most types of personal interest. Petitioner has offered no evidence and makes no argument that his payment of interest to Mr. Shober in 1988 is other than the type of personal interest that is subject to the phase-out rules in section 163(h)(5). We therefore hold that petitioner is entitled to an interest deduction for 1988 in the amount of $ 19,700 as reduced by the phase-out rules in that section. Petitioner offered no evidence of any additional interest payments to Mr. Shober during the years at issue except his uncorroborated, self-serving testimony that *595 we do not accept. Consequently, petitioner has failed to prove that he is entitled to any additional interest deductions. We therefore hold that petitioner is not entitled to any such deductions. Petitioner also testified that he made interest payments to Ms. Ogorek from whom he borrowed $ 35,000 during 1985 in order to pay Mr. Shober part of the principal and interest he owed him. In support of this assertion, petitioner produced a check, the contents of which the parties stipulated into the record at trial. The check remitted to Ms. Ogorek was for $ 6,312.75. It stated in the memo section that $ 2,975 was for 1987 and $ 3,347.75 was for 1988. It is unclear whether petitioner remitted the check to Ms. Ogorek in 1988 or 1989, since the check is dated December 30, 1988, but the date on the back of the check indicates that it was not cashed until January 18, 1989. Petitioner offered no evidence except his uncorroborated, self-serving testimony, which we do not accept, that the check was a payment of interest. Consequently, petitioner has failed to prove that the check represented the payment of interest to Ms. Ogorek. We therefore hold that petitioner is not entitled to an *596 interest deduction in respect of that payment. Claimed Property Tax Expense
Respondent determined that petitioner is entitled to deductions for real estate taxes paid for each of the years 1983 through 1988. Petitioner claims that he is entitled to deductions for such taxes for those years in excess of the amounts allowed by respondent. During the years for which respondent allowed certain real estate tax deductions, the real property in respect of which those taxes were paid was held by a trust. That trust provided that petitioner and his wife owned 60 percent of the real property held in trust and that petitioner's children owned the remaining 40 percent. Because he owned only 60 percent of the property, respondent allowed petitioner to deduct only 60 percent of the total real estate taxes paid on that property for each of the years 1983 through 1988. Petitioner claims that he paid all of the taxes on the property for some of those years and that he therefore is entitled to deduct all of the taxes for those years. Assuming arguendo that petitioner would be entitled to deduct 100 percent of the real property taxes he paid on the property for any year in which he paid *597 100 percent of the taxes, petitioner failed to prove that he paid all of the real property taxes for any year at issue. Petitioner offered no evidence except his uncorroborated, self-serving testimony, which we do not accept, that he actually paid all of the taxes for any year at issue. Moreover, petitioner testified that he did not know for which years he paid 100 percent of the taxes on the property. Consequently, petitioner has failed to carry his burden of proving that he paid 100 percent of the real estate taxes due on the property for any year at issue. We therefore sustain respondent's determination that petitioner is not entitled to any deductions for real estate taxes paid in excess of the amounts she allowed for each year at issue. Filing Status
Respondent determined that petitioner's filing status was married filing separately for each year at issue. Petitioner asserts that his status should be married filing jointly. The parties stipulated that petitioner was married during all of the years at issue. Section 1(a) provides that the filing status married filing jointly applies only to "every married individual * * * who makes a single return jointly with his *598 spouse under section 6013". From this language, it is clear that a return must be filed in order to be entitled to joint status. Thompson v. Commissioner, 78 T.C. 558, 561 (1982); see Kartrude v. Commissioner, 925 F.2d 1379, 1384 (11th Cir. 1991), affg. in part and revg. in part T.C. Memo. 1989-75. If no return is filed as of the date the case is submitted for decision, joint filing status ordinarily cannot be claimed because no return would be in the record. Phillips v. Commissioner, 86 T.C. 433, 441 n.7 (1986), affd. in part and revd. in part on another issue 851 F.2d 1492 (D.C. Cir. 1988). The parties stipulated that petitioner did not file a return for any year at issue. We therefore sustain respondent's determination that petitioner's filing status is married filing separately for each year at issue. Exemptions for Dependents
Respondent determined that petitioner is entitled to one exemption amount for himself for each year at issue. Petitioner claims he is entitled to additional exemptions for his two dependents, namely, *599 his wife and child. [19]
Section 151(b) provides that a taxpayer may take an exemption for a spouse if the taxpayer and his spouse did not file a joint return, the spouse does not have any gross income for the tax year in question, and the spouse is not a dependent of any other person. As discussed above, petitioner and his wife did not file a joint return for any year at issue. Petitioner, however, has failed to prove that his spouse had no gross income for any year at issue and that no other person can claim his spouse as a dependent for any such year. We therefore sustain respondent's determination that petitioner is not entitled to an exemption for his wife for any year at issue. Section 151(e) for tax years prior to 1987 and section 151(c) for tax years beginning with 1987 provide that a taxpayer is entitled to an additional exemption for each dependent who (1) has gross income less than *600 the exemption amount or (2) is a child of the taxpayer who is (a) either under 19 years of age or (b) a student. [20]Section 152(a) provides that a dependent includes a child of the taxpayer who receives more than half of his or her support from the taxpayer. Petitioner failed to prove that the child for whom he is claiming an exemption received more than half of his or her support from petitioner or that any of the other requirements under section 151 has been satisfied. [2]1 Consequently, petitioner has failed to sustain his burden of proving that he is entitled to a dependency exemption for that child. We therefore sustain respondent's determination that petitioner is not entitled to an exemption for his child for any year at issue. *601 Additions to Tax
Petitioner presented no evidence regarding the additions to tax (1) under section 6651(a)(1), section 6653(a)(1) and (2), and section 6654(a) for 1982, 1984, and 1985; (2) under section 6651(a)(1), section 6653(a)(1)(A) and (B), and section 6654(a) for 1986; (3) under section 6651(a)(1) and section 6653(a)(1)(A) and (B) for 1987; (4) under section 6651(a)(1), section 6653(a)(1), and section 6654(a) for 1988; and (5) under section 6651(a)(1) and section 6654(a) for 1989. However, he argues that he was suffering from depression that caused him to be unable to conduct his business affairs in an appropriate manner. In appropriate circumstances, mental illness may be a basis for relief from certain additions to tax. See, e.g., sec. 6654(e)(3); Williams v. Commissioner, 16 T.C. 893, 906 (1951); Brown v. United States, 630 F.Supp. 57, 60 (M.D. Tenn. 1985). Based on the instant record, petitioner has failed to prove that he was in fact suffering from the mental illness of depression during any of the years at issue and that such claimed depression precluded him from conducting his affairs in such a *602 way during those years as to justify relief from the additions to tax determined by respondent. Consequently, petitioner has failed to satisfy his burden of showing that respondent's determinations with respect to the additions to tax are erroneous. Accordingly, we sustain those determinations. To reflect concessions of the parties [22] and the foregoing, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code in effect for the years at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Respondent did not issue a notice of deficiency for 1983 because petitioner had a net loss for that year. However, respondent determined that the gains and losses resulting in that loss may be carried forward by petitioner to years after 1983. Petitioner claims that he had a net loss from his trading activities for 1983 in an amount greater than that determined by respondent. He also argues that he had a net operating loss for 1983 that should be carried back and then carried forward.↩
3. The parties stipulated that, in addition to the $ 38,000 of "temporary living expenses" that the Bank provided to petitioner, it provided him $ 1,500 for "temporary quarters". That stipulation is contradicted by other portions of the record and will not be accepted by the Court. See Rule 91(e). The record establishes that the $ 1,500 for "temporary quarters", which, as discussed below, is no longer at issue, was part of the $ 38,000 of "temporary living expenses" provided by the Bank to petitioner.↩
4. As discussed below, the categories "transportation of household goods" and "expenses of moving from old to new residence", whose descriptions are clear on their face, are no longer at issue.↩
5. The parties stipulated that the name of the law firm is Coffield, Ungaretti, Harris & Sloan. However, the letterhead of an exhibit introduced into evidence shows that the name of the law firm is Coffield, Ungaretti, Harris & Slavin.↩
6. The U.S. Court of Appeals for the Ninth Circuit, the court to which an appeal in this case would generally lie, requires that respondent come forward with some substantive evidence establishing a minimal evidentiary foundation for her determination that a taxpayer received unreported income before she may rely on the presumption that her determination is correct. Rapp v. Commissioner, 774 F.2d 932, 935 (9th Cir. 1985), affg. an Order of this Court; Edwards v. Commissioner, 680 F.2d 1268, 1270-1271 (9th Cir. 1982), affg. per curiam an Order of this Court; Weimerskirch v. Commissioner, 596 F.2d 358, 360 (9th Cir. 1979), revg. 67 T.C. 672↩ (1977). On the instant record, we find that respondent satisfied the requirement imposed by the Court of Appeals for the Ninth Circuit in respect of the unreported income she determined for 1982 and 1984.
7. Petitioner failed to file any briefs in this case.↩
8. The VTC records for 1984 are not in the record.↩
9. Petitioner does not dispute that the gains and the loss at issue are capital, and not ordinary.↩
10. Petitioner presented no evidence and makes no argument regarding respondent's determination of the fair market value of the benefits provided. We thus assume that petitioner agrees with those values.↩
11. Respondent conceded at trial that, of the total $ 71,110.05, $ 20,515.25 is deductible by petitioner as moving expenses under sec. 217(a). This amount consists of $ 18,190.25 for transportation of household goods, $ 825 for expenses of moving from old to new residence, and $ 1,500 for temporary living expenses. Respondent further conceded on brief that an additional $ 1,517.84 of the total $ 71,110.05 is deductible by petitioner under sec. 164(a) as State taxes for 1987. Respondent, however, takes the position that she already allowed petitioner that $ 1,517.84 State tax deduction as part of the $ 14,972 she previously conceded to him as State taxes for 1987. Since petitioner presented no evidence and makes no argument that he has not already been allowed a deduction for that $ 1,517.84 amount of State taxes for 1987, we find that petitioner is not entitled to an additional deduction for State taxes for 1987 in excess of the $ 14,972 of such taxes allowed by respondent.↩
12. Petitioner already has had the benefit of a deduction for 1984 for the legal fees that were retained by Coffield, Ungaretti because respondent did not include those amounts in petitioner's income for that year.↩
13. Respondent takes the position that the total amount of $ 30,000 she conceded at trial as membership lease expenses for 1982 must be reduced by the $ 1,125 previously conceded by her as a membership lease expense for 1982 in the parties' stipulation of facts. Petitioner testified that he believes that stipulation to be incorrect. Based on the instant record, we shall give the stipulation binding effect in accordance with Rule 91(e).↩
14. Although it is not clear, petitioner may be claiming an additional deduction for a membership lease expense for February 1983. However, respondent allowed petitioner a deduction for a membership lease expense for February 1983, and we find that petitioner is not entitled to any additional deduction for such an expense for that month.↩
15. We note that petitioner's membership lease expenses were $ 2,500 per month from August 28, 1981, through February 27, 1983. However, we find that the lease in effect during that period expired at the end of February 1983 and was not renewed. We further note that petitioner's membership lease expenses were $ 1,335 for the two months September and October 1983 and $ 750 per month for November and December 1983.↩
16. We note that petitioner's membership lease expenses for the period December 28, 1984, through June 27, 1985, were $ 550 per month.↩
17. The parties agreed at trial that respondent's determinations of the interest expenses were overstated by $ 17,891 for 1983 and understated by $ 1,009 for 1984.↩
18. Sec. 163(h)↩ does not impact the interest payment made in 1985 because it was not in effect at that time.
19. Although the record suggests that petitioner has two children, petitioner is claiming only one child as a dependent.↩
20. For 1989, in addition to being a student, the child of the taxpayer must also be under 24 years of age at the close of the taxable year to qualify under sec. 151(c)↩.
2. That is to say, petitioner did not establish that the child for whom he is claiming an exemption was under 19, a student, or had gross income less than the exemption amount.↩
22. In addition to the concessions discussed above, respondent conceded at trial that petitioner did not have gambling winnings of $ 575 for 1984.↩