Gordon R. KARTRUDE, Jr., Petitioner–Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.

No. 89–6148
Non–Argument Calendar.

United States Court of Appeals, Eleventh Circuit.

March 11, 1991.

---

Gordon R. Kartrude, Jr., Plantation, Fla., pro se.

Gary Allen, Chief, Tax Div., Appellate Div., U.S. Dept. of Justice, Janet Bradley, Michael L. Paup, David I. Pincus, Tax Div., Washington, D.C., for respondent-appellee.

Before FAY, CLARK and BIRCH, Circuit Judges.

CLARK, Circuit Judge:

Taxpayer Gordon Kartrude appeals from a decision of the Tax Court determining deficiencies in his income tax and various additions for the 1980 and 1982 tax years. For the following reasons, this decision is affirmed in part, reversed in part and remanded for a redetermination of the taxpayer's liability.

## I.

In 1974, Kartrude purchased for $26,000 fifty percent of the stock of Sport Aircraft,

Inc. ("Sport"), a subchapter S corporation, which held title to a stunt plane. The remaining stock of Sport was owned by his wife. Kartrude purchased the plane "as a recreational and enjoyable vehicle, strictly for fun, air shows." At the time, Kartrude was employed on a full-time basis with Pan American Airlines as a flight engineer, but was furloughed in 1976. During part of 1978 and 1980, he worked as a flight instructor for an aviation center. In 1978, Kartrude began operating the stunt plane in order to perform in air shows and instruct students in aerial aerobatics. At that point, he also moved the plane to a hangar and began advertising in newspapers and handing out leaflets at air shows. During 1978, Sport received revenues of $5,437.56 and incurred expenses of $10,-689.24, including $536.09 for advertising and $976.23 for parts and maintenance.

In late 1979 or early 1980,[1] Kartrude's flying partner, with whom he flew dual formation air shows, went to Jordan to train its aerobatics team. As a result, Kartrude's opportunities to fly in air shows were "drastically" reduced, and his outfit "fell apart" and his "revenue dropped." He therefore had to "let the business go" and went to work for an aviation center. During 1980, Sport produced revenue of $1061.00 and incurred expenses of $7,907.79, including $42.00 for advertising and $118.00 for parts and maintenance.

Kartrude was rehired by Pan Am on a full-time basis as a ground school instructor in 1982, and during this year, the airplane virtually never moved out of the hangar. Sport produced no revenue during 1982 and incurred expenses of $6,849.32, none of which was for advertising or maintenance. Kartrude testified that he knew that he had to fly "pretty much full time" to break even, that he knew little about operating a business, and that he felt part-

ly to blame for Sport's losses. Although he maintained a separate bank account for Sport, Kartrude paid some of its expenses out of his personal funds. The plane was always available for Kartrude's personal use during the years in question and was eventually sold for scrap.

Kartrude failed to file tax returns for the 1978, 1980, and 1982 tax years. The Commissioner issued statutory notices of deficiencies for these years and for various additions to tax pursuant to Internal Revenue Code sections 6651(a)(1) (failure to file a timely return), 6653(a) (negligent or intentional disregard of rules and regulations), and 6654 (failure to pay estimated tax). Taxpayer filed a petition for redetermination of his deficiency. Kartrude and the Commissioner stipulated to various facts concerning the years in question, including that he was married and had two children, the amount of income he had received and the tax withheld, the itemized deductions he was entitled to take, and the profit or loss of Sport.

At trial, the parties agreed that the following issues were presented: (1) whether Kartrude's stunt flying operation was engaged in for profit so that its losses were deductible; (2) whether his deficiency should be computed under joint filing rates; and (3) whether he was liable for the additions to tax. Kartrude testified that he did not file returns for the years in question because he had located a provision from the Federal Register, dated September 11, 1946, stating that a W–2 form could be filed in lieu of Form 1040.[2]

In a memorandum opinion, the Tax Court determined that Kartrude had the requisite profit motive in 1978 under section 183 to deduct his share of losses from the operation of Sport when he began the stunt flying operation, but that he lost this motive prior to the 1980 taxable year. The

1. Although not at issue, the record reveals that Sport had approximately $11,000 in gross revenues for 1979, including income received from Kartrude's work as an aviation coordinator and stunt performer in the movie "The Pilot".

2. The record, however, does show that Kartrude made strenuous and concerted attempts to get information and help from the Internal Revenue Service to resolve his outstanding tax liabilities, after he was notified of a possible tax deficiency. From 1983 to 1986, Kartrude sent nearly ten written inquiries to the service—all sent by certified mail—without receiving any substantive response to his request for assistance.

court therefore concluded that Kartrude was not entitled to a deduction for his share of Sport's losses for 1980 and 1982. The Tax Court also rejected Kartrude's claim that his deficiency should have been assessed using joint return rates under section 6013 because he had failed to make the necessary election by neglecting to file any returns for the years in question, and his wife, who was not a party to the proceeding, had not manifested her assent to file jointly. Finally, the Tax Court upheld the additions to tax under Code sections 6651 and 6653, rejecting Kartrude's argument that the filing of W–2 forms by his employers satisfied his obligation to file returns.[3] The court found that Kartrude had not located the Federal Register provision to this effect until after the filing deadlines for the years in question and that his filing of returns in 1979 and 1981 cast doubt on whether he truly believed his W–2 form could be used as a substitute return.

The Tax Court entered a decision based upon the Commissioner's Rule 155 computations, but subsequently vacated the decision in order to afford Kartrude an opportunity to contest the computations.[4] Kartrude filed an objection to the computations, claiming, *inter alia*, dependency exemptions for his two children, an IRA deduction for 1982, and a refund for 1978. He also filed a motion for reconsideration, reiterating his claim that his stunt flying operation was engaged in for profit and requesting that the court allow him to submit additional records in support of his profit motive. He also reiterated his claim that he honestly believed that the filing of his W–2 forms had satisfied his obligation to file a return, but contended for the first time that he, not his employers, had sent his W–2 forms to the IRS. He conceded that he was not entitled to have his tax liability assessed using joint return rates.

The Tax Court denied this motion for reconsideration, finding that the record lacked support for either his allegation that he had the requisite profit motive or that he believed he was entitled to file W–2 forms in lieu of tax returns. The court also found it lacked jurisdiction to determine Kartrude's claim for an overpayment in 1978 because he could not have filed a timely claim for refund on the date of the statutory notice of deficiency as required by section 6512(b). The court noted that Kartrude's entitlement to dependency exemptions had not previously been raised and that while the parties had stipulated that Kartrude lived with his wife and two children, it could not be inferred from this that he was entitled to dependency exemptions. Finally, the court found that there was no support in the record for Kartrude's claim for an IRA deduction. The Tax Court entered a decision based upon the Commissioner's revised computations and again vacated it to give Kartrude time to oppose the Commissioner's revised computations.

Kartrude filed an objection to the revised computation and a second motion for reconsideration, contending that he was entitled to one dependent exemption and a deduction for his IRA contribution. The Tax Court denied the motion and entered its final decision, determining deficiencies in income tax for 1980 and 1982 and additions to tax for failure to file a return, negligent or intentional disregard of rules, and failure to pay estimated tax.[5] Kartrude filed a

3. The Tax Court did not rule on the addition to tax under section 6654 pending the outcome of the computations of Kartrude's deficiency.

4. The Commissioner noted in his computation that no tax was due for 1978.

5.

| Taxable Year | Income Tax | Section 6651(a)(1) | Section 6653(a) |
|---|---|---|---|
| 1980 | $5,692.64 | $740.41 | $284.63 |
| 1982 | $5,719.00 | $336.00 | 0 |

motion for leave to file an out of time motion to vacate which was subsequently denied. Kartrude now brings this appeal.

## II.

### A.

██ Kartrude first contends that his operation of Sport was engaged in for profit and that the Tax Court erred in denying his deductions for business expenses. The Commissioner responds that the record fully supports the court's determination that Kartrude abandoned his objective of making a profit based on his admission that he "let the business go" after his flying partner left.

This court's review is limited to whether the Tax Court was clearly erroneous in determining that Kartrude lacked the requisite profit motive.[6] Section 183(a) generally disallows deductions of losses from activities that are not engaged in for profit. Section 183–2(b) of the Income Tax Regulations lists nine factors to be utilized to determine whether an activity is engaged in for profit: (1) the manner in which a taxpayer carries on the activity; (2) his expertise; (3) the time and effort expended on the activity; (4) the expectation that the assets of the activity may appreciate in value; (5) the taxpayer's success in similar or dissimilar activities; (6) the activity's history of income or losses; (7) the amount of occasional profits, if any; (8) the taxpay-

er's financial status; and (9) personal pleasure or recreation derived from the activity.[7]

Applying these factors to this case, it is clear that the Tax Court properly determined that Kartrude did not have the requisite profit motive for his stunt flying operation in 1980 or 1982. Kartrude admitted that he "let the business go" after his partner left in late 1979 and early 1980 and that unless he devoted himself completely to stunt flying, he could not make a profit. During these two years, however, Kartrude was employed by others on a full-time basis. Moreover, he spent a sizable amount on advertising and upkeep of the plane in 1978, but little or nothing in 1980 and 1982. He admitted that he often paid for Sport's business expenses out of his personal account. Although an experienced pilot, Kartrude also testified that he knew little about operating a business. He did not operate the plane at all during 1982 and suffered extensive losses in both 1980 and 1982. Finally, his initial reason for purchasing the plane was recreational. The Tax Court thus properly denied Kartrude's deductions for business expenses for losses suffered by Sport in 1980 and 1982.[8]

### B.

██ Kartrude argues that he is not liable for additions to his tax under sections 6651(a)(1), 6653(a) and 6654 because he believed that he could file his W–2 forms as optional tax returns in lieu of filing the

|      | Section 6653(a)(1) | Section 6653(a)(2) | Section 6654 |
|------|--------------------|--------------------|--------------|
| 1980 | 0                  | 0                  | $145.00      |
| 1982 | $ 285.95           | 50% of interest due on $5,719.00 | $ 24.22 |

**6.** *See Burger v. Commissioner,* 809 F.2d 355, 358 (7th Cir.1987).

**7.** 26 C.F.R. § 183–2(b) (1990).

**8.** Kartrude also contends that the Tax Court erred in denying his motion for reconsideration, including his request to supplement the record with additional evidence of Sport's profitability. Our review of the record indicates that the Tax Court properly denied this motion. Kartrude produced numerous exhibits at trial and was clearly given an opportunity to submit evidence of profitability. Moreover, it is doubtful that he

had such evidence in view of his having stipulated to significant losses in the 1978, 1980, and 1982 tax years, and his testimony at trial provided ample evidence that he did not possess the requisite profit motive. Kartrude also argues for the first time on appeal that he had shown these additional records to the attorney for the Commissioner prior to trial, but that the attorney subsequently denied ever seeing these records. Since this issue was not presented below, we need not reach this question.

proper forms. In support of this position, Kartrude relies upon a Statement of Procedural Rules of the old Bureau of Internal Revenue first promulgated in 1946 [9] which provides that the original of a W–2 form may be used as an optional tax return in lieu of Form 1040. These rules, however, were superseded in 1955,[10] and the current counterpart rules contain no comparable provision. Moreover, the regulations in effect at the time Kartrude failed to file returns, clearly specified that Form 1040 is the prescribed form for making a return.[11] Although Kartrude testified that the 1946 Federal Register was the most current provision he could find, he admitted that he was unsure if this regulation was still valid and only decided that he was correct when the IRS did not respond to his query in this regard. As noted by the Tax Court, Kartrude's filing of returns in the intervening years of 1979 and 1981 also cast doubt on the sincerity of his belief that this provision was still valid. The Tax Court correctly held that Kartrude did not file proper returns and that the addition to his tax under sections 6651(a)(1), 6653(a), and 6654 were proper.

■ Kartrude also contends that the Tax Court erred in denying his request to correct the Commissioner's computation of the addition to tax for 1982 under section 6653(a)(2) to include his withholding credits. Section 6653(a) imposes an addition to tax on the "underpayment" which is a "deficiency" as defined in section 6211. Section 6211 further provides that the deficiency is determined "without regard to the credit under section 31 [income tax withholding from wages]." [12] Accordingly, the Tax Court properly upheld the addition to tax under § 6653(a)(2) as computed on the entire amount of the underpayment.

**9.** *See* 11 Fed.Reg. 177A–37 to –41 (September 11, 1946).

**10.** *See* 1955–2 C.B. 921, 922.

**11.** *See* 26 C.F.R. § 1.6012–1(a)(6) (1980).

**12.** *See Schneiker v. Commissioner,* 57 T.C.M. (CCH) 1094, 1095 (1989).

### C.

Kartrude contends that the Tax Court erred in refusing to require the Commissioner to assess his deficiency by using the "married filing jointly" rates, rather than the "married filing separately rates" used by the Commissioner. The Commissioner correctly, notes, however, that Kartrude conceded this issue in his motion for reconsideration and has therefore waived this claim. However, even if Kartrude could raise this issue on appeal, he did not make the necessary election under section 6013 to have his deficiency computed under the more favorable schedule because he failed to file a return from which his tax liability could be assessed.[13]

### D.

■ Kartrude argues that the Tax Court's decision for the 1982 tax year is incorrect because it failed to allow him a deduction to his IRA of $2,000.00 and it improperly included as income dividends from his IRA of $252.00. The Tax Court denied the claim as to the IRA deduction on the grounds that the parties failed to stipulate as to the existence of such a deduction and therefore there was no support for it in the record. The record clearly shows that the parties stipulated to each itemized deduction that Kartrude was entitled to during the tax years in issue, and the taxpayer cannot now complain that he is entitled to an IRA deduction after failing to proffer the necessary documentation at the appropriate time.[14] In addition, our review of the record indicates that the Commissioner's computations of deficiency for the 1982 tax year was based on the parties' stipulation to Kartrude's income which did not include IRA dividends. Since the documentation concerning Kartrude's contributions to or dividends from his IRA was not en-

**13.** *See Counts v. Commissioner,* 774 F.2d 426, 428 (11th Cir.1985).

**14.** *See Goodmon v. Commissioner,* 761 F.2d 1522, 1524 (11th Cir.1985) (holding that Tax Court properly dismissed taxpayer's claim for deduction asserted in motion for reconsideration after court had ruled against taxpayer).

tered into the record at the appropriate time, the Tax Court's decision on this issue is affirmed.

### E.

■ Kartrude contends that the Tax Court erred in denying his claim for a refund for the 1978 tax year. Sections 6512(b)(2)(B) & (C) limit the Tax Court's jurisdiction to determine an overpayment to instances in which the taxpayer files or could have filed a timely claim for refund under section 6511 at the time the notice of deficiency was sent. Section 6511(a) requires that where no tax return is filed, a claim for refund must be filed within two years of the time the taxes were paid. Because Kartrude could not have filed a timely claim for refund on the date of the deficiency notice, November 22, 1985, the Tax Court correctly determined that it was without jurisdiction to consider his claim for overpayment.[15]

### F.

■ Finally, Kartrude contends that the Tax Court erred in denying him entitlement to personal exemptions for his wife and two children in computing his deficiency for the tax years in question. He argues that the inclusion in the parties' stipulations of fact that he was married and had two children misled him into believing that the issue of his entitlement to exemptions was settled.

Although a party's stipulation of facts is not to be disregarded lightly, we find that the Tax Court did err in failing to examine whether Kartrude was entitled to any additional personal exemptions for the members of his immediate family.[16] Initially, we note that a taxpayer's entitlement to exemptions under section 152 is a legal question and therefore cannot be conclusively and finally determined by the parties' stipulation as to the operative facts in a controversy. In addition, the taxpayer, proceeding without the benefit of legal representation, could have been reasonably

misled that the stipulation as to his family history established that he was entitled to exemptions for his wife and children. After this misapprehension was brought to the Tax Court's attention in Kartrude's motion for reconsideration, we believe that it had an obligation to conduct further proceedings to conclusively determine this matter. Stipulations are intended to improve the efficiency of the courts, but their utility is exhausted when they work injustice by creating pitfalls for unwary litigants.

On remand, the Tax Court is therefore directed to determine whether Kartrude is entitled to any exemptions for his immediate family, and if so, is directed to recompute his deficiencies for the 1980 and 1982 tax years in light of that finding. In all other respects, the decision of the Tax Court in this matter is affirmed.

For the foregoing reasons, the decision of the Tax Court is AFFIRMED in Part, REVERSED in Part and REMANDED for further proceedings not inconsistent with this opinion.

---

**15.** *See Nason v. Commissioner,* 48 T.C.M. (CCH) 1300, 1301 (1984).

**16.** *See Jasionowski v. Commissioner,* 66 T.C. 312, 318 (1976).