Ronald C. BACHNER, Appellant,

v.

COMMISSIONER OF INTERNAL
REVENUE SERVICE.

No. 95–7121.

United States Court of Appeals,
Third Circuit.

Argued Oct. 24, 1995.

Decided April 17, 1996.

Dennis P. Craig (Argued), Pittsburgh, PA, for Appellant.

Gary R. Allen, Ann B. Durney, Kenneth Rosenberg (Argued), United States Department of Justice, Tax Division, Washington, DC, for Appellee.

Before: SLOVITER, Chief Judge, COWEN and GARTH, Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Chief Judge.

Ronald C. Bachner appeals from the decision of the United States Tax Court sustaining the determination of the Commissioner of Internal Revenue of deficiencies in and additions to Bachner's federal income taxes for the tax years 1984 and 1985. Bachner claims that the applicable statute of limitations bars assessment for each year.

## I.

### *Facts and Procedural History*

In 1984 and 1985, Bachner was employed as a laboratory technician by the Westinghouse Electric Corporation. In November 1984, he sent the first of three letters to the Internal Revenue Service (IRS), all requesting assurance that his filing of a tax return would not cause him to be treated as having "relinquished" any of his constitutional rights. The District Director responded with letters emphasizing that the Internal Revenue Code mandated the filing of returns, describing the penalties otherwise applicable, and urging Bachner to submit the required information and pay the required amount.

On April 15, 1985, Bachner filed a timely Form 1040 for the 1984 tax year. In addition to providing his name, social security number, and other identification information, Bachner reported $24,441.71 on Line 7, captioned "Wages, salaries, tips, etc.", and attached the Form W–2 from his employer stating the same amount of compensation.

Bachner typed "XXXXXX" over the caption designated "Moving expense" on Line 24, and typed the amount $24,441.71 in the space provided. He added in the margin the note "No Income or Taxable Compensation See Attached Letter and Eisner v. Macomber 252 U.S. 189." He attached a letter along with the Form W–2, in which he claimed a refund of "erroneously withheld" federal income taxes, cited twenty-two court decisions and the Internal Revenue Code for support, and stated that his submission did not constitute a waiver of any rights. By applying his claimed deduction against his stated income, Bachner reported zero taxable income. He further claimed a refund of $4,396.95, the total amount withheld as taxes from his year's salary. The withheld taxes were not refunded.

At approximately the same time Bachner filed this return for 1984, Bachner filed three Forms 1040X (Amended U.S. Individual Income Tax Return), claiming refund of federal income taxes he had paid for the 1981, 1982 and 1983 tax years. Each of the claims included the statement "I have no income or taxable compensation," and was accompanied by the same letter Bachner had attached to his 1984 return.

In March 1985, Bachner filed with his employer a Form W–4 (Employee's Withholding Allowance Certificate), on which he claimed

exemption from income tax withholding. Bachner indicated on the form that he did not owe any federal income tax for the previous year and would not for the current year, and that he had a right to a full refund of all income tax withheld for the previous year and expected the same for the current year.

In August 1985, the IRS asked Bachner to provide further information regarding his claimed exemption from income tax withholding. Bachner responded by a letter again declaring that he had no taxable income and again attached the letter he had attached to his 1984 Form 1040 and to each of his three Forms 1040X. Multiple rounds of correspondence followed, with the IRS notifying Bachner that it deemed his claim of exemption invalid and had directed his employer to withhold accordingly. Predictably, Bachner repeatedly disputed the IRS's authority to do so and asserted the validity of his exemption claim.

Bachner earned $26,901.76 in wages in 1985, of which $1,547.71 was withheld as federal income tax. Bachner filed no Form 1040 or 1040A for the 1985 tax year.

In June 1989, Bachner was indicted on one count of tax evasion for the 1985 tax year, in violation of 26 U.S.C. § 7201, and four counts of filing false, fictitious or fraudulent claims for tax refund for the 1981 through 1984 tax years, in violation of 18 U.S.C. § 287. After a jury trial in the Western District of Pennsylvania, Bachner was acquitted of all charges.

In December 1990, Bachner received two letters from the IRS, one regarding his tax liability for the 1984 tax year and the other for the 1985 tax year. The letters, with identical text, stated in their entirety:

Based on the information you have provided, the account specified above is resolved. We may contact you in the future, if further issues arise requiring clarification. At present, no further response is needed on the above account.

App. at 60–61.

On September 11, 1992, the IRS issued to Bachner a notice of deficiency for the 1984 and 1985 tax years. The notice asserted tax deficiencies of $4,096 for 1984 and $4,708 for 1985, and additions for fraud pursuant to I.R.C. § 6653(b) of $2,048 for 1984, and $2,354 plus 50 percent of the interest due on the unpaid deficiency of $3,161 for 1985. The asserted deficiencies did not reflect the amounts withheld of $4,397 in 1984 and $1,547 in 1985.

Bachner petitioned the Tax Court for redetermination of the asserted deficiencies for both years. Bachner relied on the statute of limitations in § 6501(a) of the Internal Revenue Code, which limits assessment to "within 3 years after the return was filed." With respect to the 1984 tax year, he contended that the Form 1040 he had filed, though irregular in format, provided information sufficient for the IRS to have computed his tax liability for that year, and therefore it qualified as a "return" adequate to trigger the running of the statute of limitations. Bachner conceded that he had filed no Form 1040 or 1040A for the 1985 tax year, but claimed that the Form W–2 submitted by his employer equipped the IRS with data sufficient to determine his tax liability for 1985. Therefore, the W–2 "filed on his behalf" served as a "return" within the meaning of I.R.C. § 6501(a) and marked the commencement of the three-year limitations period. Finally, Bachner argued that even if the Forms 1040 and W–2 were not "returns" upon submission, the IRS's subsequent communication in December 1990, declaring his accounts for 1984 and 1985 "resolved," constituted after-the-fact "acceptance" of the documents as valid tax returns.

Following a trial at which all the relevant facts were stipulated, the Tax Court sustained the Commissioner's determination of deficiencies with respect to both years. The court held that the statute of limitations was inapplicable and both years remained open to assessment since neither the unusual Form 1040 filed for 1984 nor the W–2 Bachner's employer submitted for 1985 qualified as a "return" that would commence the running of the statute of limitations under § 6501(a). The court further held that the December 1990 letters neither purported to be, nor effectively constituted, waivers of the IRS's filing requirements.

In addition to deciding that there were deficiencies in income taxes due for the tax years 1984 and 1985 in the amounts of $4,096 and $4,708 respectively, the Tax Court imposed additions to tax for Bachner's negligent underpayment of taxes for the tax years 1984 and 1985 under I.R.C. § 6653(a), and for Bachner's failure to file a return for the tax year 1985 under I.R.C. § 6651(a)(1).

The Tax Court had jurisdiction under 26 U.S.C. §§ 6213(a) and 7442, and we have jurisdiction over Bachner's appeal pursuant to 26 U.S.C. § 7482(a)(1).

## II.

### Discussion

■ Decisions of the Tax Court are reviewed in the same manner as district court decisions in non-jury civil actions. *See Holof v. Commissioner*, 872 F.2d 50, 52 (3d Cir. 1989); 26 U.S.C. § 7482(a)(1). The issues on appeal involve only questions of statutory construction and application, and therefore we conduct de novo review. *See Armstrong World Indus., Inc. v. Commissioner*, 974 F.2d 422, 430 (3d Cir.1992).

### A.

### Tax Year 1984

This case turns on our interpretation of the three-year statute of limitations on assessment of taxes found in I.R.C. § 6501(a) (1994). That provision reads in full:

Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years *after the return was filed* (whether or not such return was filed on or after the date prescribed) or, if the tax is payable by stamp, at any time after such tax became due and before the expiration of 3 years after the date on which any part of such tax was paid, and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period.

(emphasis added).

With respect to Bachner's 1984 tax year, the Tax Court sustained the Commissioner's deficiency determination, accepting the Commissioner's contention that Bachner's Form 1040 was not a valid "return" and that therefore the 1984 year remained open to assessment. On appeal, the Commissioner now concedes the validity of Bachner's Form 1040 as a tax return, and thus acknowledges that the three-year limitations period on his 1984 tax year has expired. The Commissioner distinguishes Bachner's 1984 return from that held inadequate in *Beard v. Commissioner*, 82 T.C. 766, 1984 WL 15573 (1984), *aff'd*, 793 F.2d 139 (6th Cir.1986), on which the Tax Court relied, on the ground that the modifications on Bachner's return were neither as extensive nor as obfuscatory as those made by Beard. The Commissioner now only requests that we vacate the Tax Court's decision with respect to the deficiency in and addition to tax for the 1984 tax year and remand for determination of whether, and to what extent, Bachner has made any overpayment of taxes for that year.

■ Bachner agrees that the Tax Court decision should be vacated. However, he contends that inasmuch as it is conceded that the Commissioner's assessment for 1984 is time-barred, he is now entitled to a refund of all taxes withheld from his 1984 salary. He argues that because there are no factual issues outstanding for resolution, this court should order a refund for that amount.

We reject the course Bachner proposes. First, the fact that the parties agree that I.R.C. § 6501(a) bars the Commissioner from assessment with respect to the 1984 tax year is not determinative of any refund claim filed by Bachner for that year. The language in § 6501 refers only to "limitations on assessment and collection," and the operative clause of § 6501(a) directs only that taxes "be *assessed* within 3 years after the return was filed." I.R.C. § 6501 (1995). A deficiency determination, by which the IRS seeks to establish the taxpayer's additional tax liability, is patently different from a refund determination, by which the taxpayer seeks repayment or credit from the IRS.

The mutual independence of deficiency determinations and refund determinations was established in *Lewis v. Reynolds*, 284 U.S. 281, 52 S.Ct. 145, 76 L.Ed. 293 (1932).

There, the taxpayer claimed, *inter alia*, deductions for attorney's fees and inheritance taxes paid. The Commissioner disallowed all deductions except that for attorney's fees, and assessed a deficiency within the limitations period. The taxpayer paid the deficiency and then requested a refund. The Commissioner rejected the refund claim, and, although the statute of limitations had run by then, asserted that even if the inheritance-tax deduction should have been allowed, the attorney-fee deduction had been improperly allowed and that the deficiency would be even greater than that originally asserted and paid. *Id.* at 282, 52 S.Ct. at 146.

The Supreme Court held that the Commissioner's authority to reaudit a return whenever repayment is claimed is necessarily implied. The Court also stated:

> An overpayment must appear before refund is authorized. Although the statute of limitations may have barred the assessment and collection of any additional sum, it does not obliterate the right of the United States to retain payments already received when they do not exceed the amount which might have been properly assessed and demanded.

*Id.* at 283, 52 S.Ct. at 146.

In *Lewis,* there was the complication, never expressly mentioned, that the Commissioner's assertion of an alternative ground for his earlier assessment was made after the statute of limitations had run. In contrast, the Commissioner here merely collected and thereafter retained the tax funds withheld from Bachner's 1984 salary. Absent a determination of overpayment, the Commissioner's concession of a time-bar leaves unaffected the question of a requested refund.

■ Second, the Internal Revenue Code makes clear that a Tax Court determination of overpayment is a prerequisite to any award of the amount of such overpayment where a notice of deficiency has been issued and redetermination sought in the Tax Court. I.R.C. § 7459(e) (1994) provides:

> If the assessment or collection of any tax is barred by any statute of limitations, the decision of the Tax Court to that effect

shall be considered as its decision that there is no deficiency in respect of such tax.

I.R.C. § 6512(b)(1) (1994), in turn, describes the required jurisdictional path after a finding of no deficiency:

> [I]f the Tax Court finds that there is no deficiency and further finds that the taxpayer has made an overpayment of income tax for the same taxable year, ... the Tax Court shall have jurisdiction to determine the amount of such overpayment, and such amount shall, when the decision of the Tax Court has become final, be credited or refunded to the taxpayer.

Finally, I.R.C. § 6512(a) (1994) makes clear the exclusivity of the Tax Court's authority to determine the fact and amount of overpayment under these circumstances:

> If the Secretary has mailed to the taxpayer a notice of deficiency under section 6212(a) ... and if the taxpayer files a petition with the Tax Court within the time prescribed in section 6213(a) ... *no credit or refund of income tax for the same taxable year ... shall be allowed or made* and no suit by the taxpayer for the recovery of any part of the tax shall be instituted *in any court except—*
>
> (1) *As to overpayments determined by a decision of the Tax Court which has become final ....*

It follows that the Tax Court must first make a determination of any outstanding overpayment.

■ Bachner argues that in contrast to "voluntary payments" of tax, which may not be refundable without a preliminary determination of overpayment, his 1984 wage withholdings represent an involuntary "deposit," since he remitted funds disputing, rather than acknowledging, his tax liability. He contends that such a deposit becomes an "overpayment"—and thus immediately refundable—upon untimely assessment alone, and that such a refund should be ordered by this court without remand to the Tax Court.

There is ample basis to find unpersuasive Bachner's view of wage withholdings as "deposits," refundable merely upon late assessment. *See Ehle v. United States,* 720 F.2d

1096, 1097 (9th Cir.1983) (interpreting I.R.C. § 6513(b)(1), which treats a taxpayer's withholdings as *"paid* by him on the 15th day of the fourth month following the close of his taxable year," as precluding their treatment as deposits) (emphasis added); *Binder v. United States,* 590 F.2d 68, 70–71 (3d Cir. 1978) (rejecting taxpayer's characterization of withholdings as deposits where sums remitted to IRS without accompanying indication that they not be treated as advance tax payments).

In any event, we are neither free nor disposed to overlook the plain statutory command of I.R.C. § 6512(a) that where a taxpayer has received a notice of deficiency and timely filed a petition in the Tax Court, it is the Tax Court that must determine the fact of overpayment and the amount. The two cases on which Bachner relies, *Rosenman v. United States,* 323 U.S. 658, 65 S.Ct. 536, 89 L.Ed. 535 (1945), and *Cohen v. United States,* 995 F.2d 205 (Fed.Cir.1993), holding that a "deposit" is to be refunded upon untimely assessment, are inapposite because they did not involve refund claims for tax years already brought before the Tax Court for deficiency redeterminations. Therefore, I.R.C. § 6512 was inapplicable there.

The questions of overpayment and refund as to Bachner have not been adjudicated by the Tax Court. Having decided that those questions are independent of the deficiency issue, we obviously must leave for the Tax Court the determination, in the first instance, of the existence and extent of any overpayment by Bachner for the 1984 tax year. This is especially so given Bachner's failure to raise any issues regarding the computation of his 1984 liabilities or the precise extent of any overpayment. *See Huli v. Internal Revenue Service,* 872 F.2d 22, 24 (2d Cir.1989) (remand appropriate where issues neither briefed nor adjudicated below); *Roth Steel Tube Co. v. Commissioner,* 800 F.2d 625, 632 (6th Cir.1986) (issues not raised before Tax Court inappropriate for appellate review), *cert. denied,* 481 U.S. 1014, 107 S.Ct. 1888, 95 L.Ed.2d 496 (1987). It follows that a remand to the Tax Court with respect to the 1984 tax year is in order.

**B.**

*Tax Year 1985*

The statute of limitations issue as to Bachner's 1985 tax year is different from that he presented as to the 1984 tax year. The three-year limitations period in I.R.C. § 6501 begins to run only "after the return was filed." The Commissioner invokes I.R.C. § 6501(c)(3) to support his assertion that Bachner's failure to file a return precludes operation of the statute of limitations and yields an unlimited period for assessment. That section provides:

In the case of failure to file a return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time.

I.R.C. § 6501(c)(3) (1994).

Bachner concedes that he filed no Form 1040 or 1040A for the 1985 tax year. He argues nonetheless that the assessment is barred because the W–2 filed by his employer for that year constituted a "return" for § 6501(a) purposes. In support of equating the W–2 with a § 6501(a) "return," Bachner makes two contentions: (1) that the W–2 correctly reported all of the data required sufficient to compute the tax due, and (2) that the IRS "accepted" the W–2 as a valid return in its December 1990 letter declaring his account "resolved."

Underlying our analysis of Bachner's W–2 contention is the generally applicable principle enunciated by the Supreme Court that, in applying limitations provisions, "[s]tatutes of limitation sought to be applied to bar rights of the Government... must receive a strict construction in favor of the Government." *Badaracco v. Commissioner,* 464 U.S. 386, 391, 104 S.Ct. 756, 761, 78 L.Ed.2d 549 (1984) (quoting *E.I. Du Pont De Nemours & Co. v. Davis,* 264 U.S. 456, 462, 44 S.Ct. 364, 366, 68 L.Ed. 788 (1924)).

There are multiple bases on which to conclude that the Form W–2 submitted by Bachner's employer cannot qualify as a return adequate to trigger the limitations period on assessment. The statutory requirements are clear. Each taxpayer must comply with the

Treasury regulations governing the proper filing of returns.

> *Every person* liable for any tax imposed by this title, or for the collection thereof, *shall* keep such records, render such statements, *make such returns, and comply with such rules and regulations as the Secretary may from time to time prescribe.*

I.R.C. § 6001 (1994) (emphasis added).

This encompasses making a return in accordance with the format prescribed by the Secretary:

> When required by regulations prescribed by the Secretary *any person* made liable for any tax imposed by this title, or with respect to the collection thereof, *shall make a return* or statement *according to the forms and regulations prescribed by the Secretary.* Every person required to make a return or statement shall *include therein the information required by such forms* or regulations.

I.R.C. § 6011(a) (1994) (emphasis added).

The Treasury regulations, in turn, expressly require taxpayers to file federal income tax returns on Forms 1040 or 1040A only, and nowhere make accommodation for Forms W–2 as valid surrogates. *See* Treas. Reg. § 1.6012–1(a)(6).

The Supreme Court repeatedly has declared that tax returns must comply strictly with prescribed requirements in order to trigger applicable limitations periods. *See, e.g., Lucas v. Pilliod Lumber Co.,* 281 U.S. 245, 249, 50 S.Ct. 297, 299, 74 L.Ed. 829 (1930); *Florsheim Bros. Drygoods Co. v. United States,* 280 U.S. 453, 459–60, 50 S.Ct. 215, 217, 74 L.Ed. 542 (1930); *Commissioner v. Lane–Wells Co.,* 321 U.S. 219, 222–24, 64 S.Ct. 511, 513–14, 88 L.Ed. 684 (1944). More specifically, the Court has held that inclusion of the taxpayer's signature is a prerequisite to the validity of the tax return for purposes of the statute of limitations. *See Badaracco,* 464 U.S. at 396–97, 104 S.Ct. at 763–64; *Zellerbach Paper Co. v. Helvering,* 293 U.S. 172, 180, 55 S.Ct. 127, 131, 79 L.Ed. 264 (1934). In *Doll v. Commissioner,* 358 F.2d 713 (3d Cir.1966) (per curiam), this court held that the absence of the taxpayer's signa-

ture on the taxpayer's return was enough to render the return invalid and, as a result, to preclude the operation of the § 6501(a) limitations period on assessment. *Id.* at 714. Of course, the Form W–2 submitted by Bachner's employer bore no signature, and further represented a complete departure from the uniform format prescribed in the Treasury regulations.

Bachner frankly admits that his employer's submission of a W–2 is inadequate, stating: "Obviously, a W–2 does not have a signature which ordinarily is required to be a return for purposes of the statute of limitations." Brief of Appellant at 15. He suggests, however, that because the Form W–2 correctly reported sufficient information to permit computation of his tax liability for 1985, it must be construed as satisfying § 6501(a)'s "return" requirement. He cites the Supreme Court's opinion in *Germantown Trust Co. v. Commissioner,* 309 U.S. 304, 310, 60 S.Ct. 566, 569, 84 L.Ed. 770 (1940), for the proposition that the functional adequacy of the information provided, rather than compliance with formal requirements, is the determinative feature of a valid return.

Even were we to assume that that ambitious interpretation were valid, the W–2 information is not independently sufficient for tax-computation purposes and Bachner fails to forward any supporting argument to suggest otherwise. The W–2 submitted, of course, included only the amount of Bachner's "Wages, tips, other compensation" for 1985, without mention of any other potential sources, types, or amounts of income. Reporting only one item of income cannot be equated with affirmatively declaring zero amounts for all others, especially given the IRS's inevitable dependence on after-the-fact audit for effective enforcement. *See Di Stephano v. District Director,* No. 89–00674 DAE, 1990 WL 74479, at *2 (D.Haw. Apr.16, 1990) (determining that Form W–2 claimed as tax return contained critical tax information but, in absence of Form 1040, not sufficient information to compute liability), *aff'd,* 933 F.2d 1013 (9th Cir.1991) (unpublished disposition); *cf. Zellerbach Paper,* 293 U.S. at 182, 55 S.Ct. at 131. Whether or not in retrospect the amount specified on the W–2

actually coincided with Bachner's total income for 1985, the W–2 form failed to provide facts addressed to or determinative of other potential liabilities and therefore was not sufficient to be considered a "return." *See Lane–Wells,* 321 U.S. at 223, 64 S.Ct. at 513 (corporation's income-tax return inadequate for statute-of-limitations purposes, although it disclosed all ultimately determinative income information, for failing to "show the facts on which liability would be predicated" for a potentially applicable holding-company tax).

Bachner's reference to the historical fact that the Internal Revenue Service at one time considered a W–2 an income tax return is irrelevant since, as he concedes, that regulation, TR § 601.2 (1946), was superseded by TR § 29.51–2(c)(1) (1948), which, like its modern-day counterpart in TR § 1.6012–1(a)(6), limited taxpayers to use of Forms 1040 or 1040A in filing valid returns, absent special and specifically designated circumstances. If anything, the evolution of the Treasury's regulatory return requirements demonstrates its affirmative judgment that Forms W–2 are inadequate for return-filing purposes.

Finally, we cannot find a single federal court decision to have addressed the competence of Forms W–2 as tax returns without also rejecting the same. *See Kartrude v. Commissioner,* 925 F.2d 1379, 1384 (11th Cir.1991) (W–2 not a return for addition-to-tax purposes); *United States v. Birkenstock,* 823 F.2d 1026, 1030 (7th Cir.1987) (W–2 not return for criminal failure-to-file purposes); *United States v. Stillhammer,* 706 F.2d 1072, 1075 (10th Cir.1983) (W–2 not return for criminal tax evasion purposes); *United States v. Rickman,* 638 F.2d 182 (10th Cir. 1980) (conviction for failure to file return upheld where taxpayer submitted W–2 but no properly completed 1040); *Di Stephano,* 1990 WL 74479, at *2 (W–2 contains critical tax information, but not sufficient information to compute liability in absence of Form 1040); *Reiff v. Commissioner,* 77 T.C. 1169, 1981 WL 11398 (1981) (32–page submission containing W–2 and modified 1040 not valid return).

Nor do we find persuasive Bachner's alternative argument that even if his employer's submission of the Form W–2 does not alone satisfy the § 6501(a) "return" requirement, then the IRS's subsequent notification that Bachner's account was "resolved" constituted after-the-fact "acceptance" of the Form as a valid return.

The statutory provisions requiring not only the raw submission of returns, but also "compl[iance] with such rules and regulations as the Secretary may from time to time prescribe," I.R.C. § 6001 (1994), and their submission "according to the forms and regulations prescribed by the Secretary," I.R.C. § 6011 (1994), directly incorporate the Secretary's regulatory requirements as the defining statutory standard. Any attempted waiver by agents with only delegated authority would be ineffective.

Even were the relevant return-filing requirements to arise purely from the authority of the Secretary to promulgate rules pursuant to a statutory grant, the requirements for filing a return set forth in TR § 1.6012–1(a)(6) have the force of law. *See Boulez v. Commissioner,* 810 F.2d 209, 213–16 (D.C.Cir.) (Treasury regulation requiring written compromise agreements rendered oral agreement between IRS district director and taxpayer unauthorized and invalid), *cert. denied,* 484 U.S. 896, 108 S.Ct. 229, 98 L.Ed.2d 188 (1987). The mandatory requirements of TR § 1.6012–1(a)(6) are not susceptible to ad hoc rescission. *See United States v. Correll,* 389 U.S. 299, 305–06, 88 S.Ct. 445, 449, 19 L.Ed.2d 537 (1967) (citing "the settled principle that 'Treasury regulations and interpretations long continued without substantial change, applying to unamended or substantially reenacted statutes, are deemed to have received congressional approval and have the effect of law.'") (quoting *Helvering v. Winmill,* 305 U.S. 79, 83, 59 S.Ct. 45, 46, 83 L.Ed. 52 (1938)).

Finally, regardless of whether the Commissioner was *capable* of waiving the formal requirements governing return-filing, Bachner has not established that the December 1990 correspondence might soundly be construed as having waived those requirements. To the extent that Bachner may be

arguing that the ambiguous December 1990 letter from the IRS[1] constitutes a basis to bind the government via equitable estoppel, we reject that contention. *See United States v. Pepperman,* 976 F.2d 123, 131 (3d Cir. 1992) (estoppel as a result of a government agent's misrepresentations only in "rare and extreme circumstances," where the " 'interest of citizens in some minimum standard of decency, honor, and reliability in their dealings with their Government' " is imperiled) (quoting *Heckler v. Community Health Servs.,* 467 U.S. 51, 61, 104 S.Ct. 2218, 2224, 81 L.Ed.2d 42 (1984)). Estoppel claims have traditionally been put to especial rigor in the taxation context. *See, e.g., Automobile Club of Michigan v. Commissioner,* 353 U.S. 180, 187, 77 S.Ct. 707, 711, 1 L.Ed.2d 746 (1957) ("[T]he express condition prescribed by the Congress was that the statute was to run against the United States from the date of the actual filing of the return, and no action of the Commissioner can change or modify the conditions under which the United States consents to the running of the statute of limitations against it."); *Pilliod Lumber,* 281 U.S. at 249, 50 S.Ct. at 299 ("Under the established general rule a statute of limitations runs against the United States only when they assent and upon the conditions prescribed. Here assent that the statute might begin to run was conditioned upon the presentation of a return duly sworn to. No officer had power to substitute something else for the thing specified.").

The December 1990 letter fails to provide any basis for a finding of estoppel. *See United States v. Asmar,* 827 F.2d 907 (3d Cir.1987) (employing four-prong analysis). First, there was no misrepresentation. The admittedly vague statement, "the account specified above is resolved," is *qualified* by the explicit reservation of the possibility that "further issues" could arise, and the letter's conclusion with the carefully limited statement that no further response is required "at present." Given that "the burden of proof is on the party claiming estoppel," *Asmar,* 827 F.2d at 912, Bachner's estoppel attempt fails at the first step.

Second, Bachner has demonstrated no detrimental reliance on the December letter. Bachner has repeatedly emphasized his ideological objections to the collection of any owed income taxes. Absent any allegation to the contrary, it remains likely that those convictions originally expressed in 1984 and 1985, and not any claimed reaction to a letter received long after, were the operative catalyst in his refusal to submit anything to expand on the Form W–2. Furthermore, Bachner received the letter more than one year after the expiration of any limitations period that would have run upon the filing of a valid return for the 1985 tax year. There is no basis to assume Bachner would have submitted *voluntarily* a conventional return in 1990, when he had already refused to do so while still under threat of assessment.

Finally, Bachner has shown no affirmative misconduct on the part of the government, but at most negligence or mistake of law, neither of which furnishes proper grounds for estoppel. *See Pepperman,* 976 F.2d at 131 (negligence); *Becker v. Commissioner,* 751 F.2d 146, 150 (3d Cir.1984) (mistake of law). Most telling and dispositive is that the December 1990 letter never states that the employer's submission of a W–2 form is accepted as a "return" for the tax year 1985.

In light of the clarity of the relevant statutory and regulatory requirements, the general principle that limitations provisions are construed narrowly against the government, and Bachner's failure to provide any persuasive reason otherwise, we conclude that the Form W–2 submitted by Bachner's employer is not a "return" within the meaning of I.R.C. § 6501(a) and, therefore, that the Commissioner's assessment of deficiencies for Bachner's 1985 tax year is not barred.

### III.

#### *Conclusion*

For the foregoing reasons, we will reverse the Tax Court's decision with respect to the 1984 tax year and remand for further pro-

---

1. That letter stated: "Based on the information you have provided, the account specified above is resolved. We may contact you in the future, if further issues arise requiring clarification. At present, no further response is needed on the above account." App. at 61.

ceedings not inconsistent with this opinion. With respect to the 1985 tax year, we will affirm the decision of the Tax Court. Each party to bear its own costs.