OPINION
AMBRO, Circuit Judge.
Leroy M. Bennett appeals his conviction for five counts of willfully failing to file federal income tax returns for tax years 2000 through 2004, in violation of 26 U.S.C. § 7203.[1] For the following reasons, we affirm the District Court’s judgment.
Because we write solely for the parties, we recount only the facts relevant to our analysis. In 1995, Bennett, a Pennsylvania resident, stopped filing federal income taxes on various grounds, including that taxes *778 were voluntary, could not apply to his income, and could not be collected by the Internal Revenue Service (“IRS”). The IRS began calculating Bennett’s tax liability using the withholding information reported on W-2 forms submitted by his employers (General Electric Company through 2002, and Wal-Mart Stores Inc. beginning in 2004). Despite the withhold-ings, Bennett owed the IRS money each year. The IRS told Bennett that it would begin levying against assets if he refused to pay his taxes. He responded by filing bankruptcy when the IRS tried to garnish his wages and, to reduce withholdings, claiming many more exemptions than applied to him. The IRS eventually threatened Bennett with criminal sanctions, and in 2006 and 2007 he finally filed 12 years of tax returns for tax years 1995 through 2006. In them, Bennett claimed that the IRS owed him almost $350,000, even though his employers withheld much less than that over those years.
In August 2007, Bennett was indicted by a grand jury in the Western District of Pennsylvania on five counts of § 7203 violations, and in December 2007 a jury found him guilty of all five counts. Bennett was sentenced to 21 months’ imprisonment and one year supervised release, which was the lower end of the advisory Sentencing Guidelines range, U.S.S.G. §§ 2T1.1 & 2T4.1, calculated by taking into account Bennett’s $80,000 owed in back taxes to the IRS.
On appeal, Bennett argues that: (1) because his employers filed W-2 forms with the IRS on his behalf, his filing of income tax returns was voluntary and therefore the District Court lacked subject matter jurisdiction over the charges; (2) the Paper Reduction Act of 1995 (“PRA”) provides a complete or “good faith” defense to a charge of willfully failing to file an income tax Form 1040; (3) the Government was required to show that he had knowledge of the specific provision he was alleged to have violated to meet its burden of proof; and (4) it was error to include tax years 2000 through 2004 in calculating the amount of tax loss caused by his crime for sentencing purposes.[2]
The crime charged here has three elements: (1) the duty or requirement to file a tax return; (2) failure to file the return; and (3) willfulness. See United States v. McKee, 506 F.3d 225, 244 (3d Cir.2007) (citing United States v. Foster, 789 F.2d 457, 460 (7th Cir.1986)). Bennett’s first claim — that the W-4 forms he completed for his employers, and the W-2 forms that his employers submitted to the IRS, made filing income tax returns voluntary — goes to the “duty” element of the offense. This argument has been rejected by us and other courts of appeals. In Bachner v. Commissioner, 81 F.3d 1274, 1280 (3d Cir.1996), we held that information on the W-2 form is not independently sufficient for tax-computation purposes, as it “fail[s] to provide facts addressed to or determinative of other potential liabilities and therefore [is] not sufficient to be considered a ‘return.’ ” See also Kartrude v. Commissioner, 925 F.2d 1379, 1384 (11th Cir.1991); United States v. Birkenstock, 823 F.2d 1026, 1030 (7th Cir.1987); United States v. Rickman, 638 F.2d 182 (10th Cir.1980). Bennett cites United States v. *779 Patridge, 507 F.3d 1092 (7th Cir.2007), as support for this contention. However, the portion of the decision he cites relates to his PRA claim, not to whether he had an independent duty to file. We therefore turn to Bennett’s PRA argument.
The Court in Patridge stated that “the obligation to file a tax return stems from 26 U.S.C. § 7203,” and the PRA does not “change any substantive obligation” or repeal § 7203. Id. at 1094-95. Bennett claims that, despite this, the PRA provides a complete or “good faith” defense to a charge of willfully failing to file income tax returns because Form 1040 does not comply with the PRA requirements. The Government points out that this argument was soundly rejected in Miller-Wagenknecht v. Commissioner, 285 Fed.Appx. 956 (3d Cir. 2008), and in Barzeski v. Commissioner, 173 Fed.Appx. 175 (3d Cir.2006). Because these decisions are not precedential, we do not rely on them. That does not mean we come out any differently, however. The obligation to file federal income tax returns stems from a Congressional statute, while the PRA applies to agency regulations, and thus the PRA has no effect on the IRS’s ability to penalize taxpayers for failing to provide a complete and candid report of them income. See Patridge, 507 F.3d at 1095; United States v. Hicks, 947 F.2d 1356, 1359 (9th Cir.1991). Additionally, it is well established that Form 1040 bears the necessary control number and expiration date to be in compliance with the PRA. See Patridge, 507 F.3d at 1095; United States v. Dawes, 951 F.2d 1189, 1193 (10th Cir.1991).
Bennett also contends that the Tenth Circuit’s decisions in United States v. Chisum, 502 F.3d 1237 (10th Cir.2007), and Pond v. Commissioner, 211 Fed.Appx. 749 (10th Cir.2007), support his claim that the PRA provides a defense to failure to file income taxes. There the Court held that the PRA was not implicated where a taxpayer had filed false returns because it “protects a person only for failing to file information,” Chisum, 502 F.3d at 1243-44, and that tax forms are collection requests within the meaning of the PRA, see Pond, 211 Fed.Appx. at 752. The problem at the outset for Bennett is that the most recent Tenth Circuit decision on this issue is Lewis v. Commissioner, 523 F.3d 1272 (10th Cir.2008). It clarified Chisum and Pond; Chisum “should not be read to support an argument that the PRA ultimately protects individuals who fail to file tax information,” and Pond simply “declined to address the argument that [Form 1040] violated the PRA because the defendant had not included any of the forms in the record,” and “even affirmed the district comb’s dismissal of the PRA claims as frivolous.” Id. at 1275 nn. 4-5. After reviewing Lewis’ arguments, which were comparable to those Bennett presents on appeal, the Tenth Circuit’s decision confirmed that they lacked sufficient merit and held that Form 1040 satisfies the PRA requirements. Id. at 1277.
Bennett next claims that, to satisfy its burden of proof regarding the “willfulness” element of his crime, the Government was required to prove that he had actual knowledge of the specific provision of the Tax Code he was violating. He cites Bryan v. United States, 524 U.S. 184, 118 S.Ct. 1939, 141 L.Ed.2d 197 (1998), arguing that it requires the Government to prove he was aware of the “specific provision of the Tax Code he was charged with violating.” Id. at 194, 118 S.Ct. 1939. But Bennett fails to acknowledge that (1) Bryan involved a firearms violation, and thus the Court’s statement regarding the Tax Code could not possibly have been its holding;[3] (2) the Bryan *780 Court specifically noted that the reason for requiring actual knowledge was that certain tax cases involve “highly technical statutes that present ... the danger of ensnaring individuals engaged in apparently innocent conduct”; and (3) the Court further noted that, “[e]ven in tax cases, we have not always required this heightened mens rea.” Id. at 194 & n. 17, 118 S.Ct. 1939. A heightened mens rea was not required here. Bennett paid taxes for at least 20 years before he stopped filing. That he did so makes plain he knew of his duty to pay taxes and file proper tax returns, and no technical “ensnaring” appears even remotely plausible.
Finally, Bennett challenges the District Court’s inclusion of tax years 2000 through 2004 in its calculation of the amount of tax loss caused by his violations. This argument is an extension of his first claim, as he asserts that because his employers timely and accurately filed W-2s on his behalf for these years, his income was therefore “reported” and should not be used to enhance his sentence under tax loss. Just as Bennett’s underlying claim fails, so too does its sentencing corollary. The Government’s calculation of the tax loss caused by Bennett’s violations was consistent with the Sentencing Guidelines set out in U.S.S.G. §§ 2T1.1 & 2T4.1. Indeed, its conclusion that Bennett owed approximately $80,000 in back taxes was actually a conservative estimate.[4] We note that Bennett was sentenced to 21 months’ imprisonment and one year supervised release, a sentence at the bottom of the advisory Guidelines range of 21 to 27 months for Bennett’s offense level of 16 (his criminal history category is I).[5]
For these reasons we affirm the judgment of the District Court.

. The District Court had jurisdiction under 18 U.S.C. § 3231. We have appellate jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

. Our review of a district court’s subject matter jurisdiction is da novo. See Pontarelli v. U.S. Dep't of the Treas., 285 F.3d 216, 219 (3d Cir.2002) (citing In re Phar-Mor, Inc. Sec. Litig., 172 F.3d 270, 273 (3d Cir.1999)). We exercise plenary review over the legal findings of a district court, including its interpretation of federal income tax statutes, see In re CM Holdings, Inc., 301 F.3d 96, 101 n. 3 (3d Cir.2002) (citing ACM Partnership v. Commissioner, 157 F.3d 231, 245 (3d Cir.1998)), and we apply a plain error standard to alleged sentencing errors raised for the first time on appeal. See United States v. Russell, 564 F.3d 200, 203 (3d Cir.2009) (citing United States v. Lloyd, 469 F.3d 319, 320 (3d Cir.2006)).

. See United States v. Cavins, 543 F.3d 456, 458-59 (8th Cir.2008) (characterizing the language from Bryan regarding the Tax Code as dictum).

. The Government gave Bennett the standard deductions he could have claimed had he actually filed his tax returns, but the majority of the courts of appeals do not require this. See, e.g., United States v. Delfino, 510 F.3d 468, 473 (4th Cir.2007) (holding that the Government is not required to include a taxpayer's deductions in its calculation of the amount of tax loss under U.S.S.G. § 2T1.1); United States v. Chavin, 316 F.3d 666, 679 (7th Cir.2002) (rejecting the inclusion of deductions); United States v. Spencer, 178 F.3d 1365, 1368 (10th Cir.1999) (rejecting the interpretation of the statute as "giving taxpayers a second opportunity to claim deductions after having been convicted of tax fraud”). But see United States v. Gordon, 291 F.3d 181, 187 (2d Cir.2002) (concluding that § 2T1.1(c)(1)(A) requires tire calculation of deductions).

. We note that, while we agree with the Government that Bennett’s arguments on appeal are unpersuasive, the language used in its brief to us is often too cute for cricket. Whatever the legal merit of his claims, Bennett takes them seriously enough to go to jail for nearly two years. The Government should be equally serious.